Report of Committee in favor of giving Seat to Heney Clausen, Je.
Assembly Chambee, April 3d, 1868.
Mr. F. H. Woods, from the majority of the committee on privileges and elections, submitted in writing a report m the case of the contested seat of G. B. Van Brunt.
Mr. Pitts moved to lay said report on the table, that it be printed and made the special order for Tuesday next.
Mr. Speaker put the question whether the House would agree to said .motion, and it was determined in the negative.
Ayes, 47. Hoes, 50.
The report was then read.
Mr. F. H. Woods moved to lay said report on the table, and that it be printed.
Mr. Hartman moved to amend by adopting the report.
Mr. Speaker announced the question to be upon the motion of Mr. F. II. Woods.
Mr. Speaker then put the question whether the House would agree to said motion of Mr. Woods, and it was determined in the affirmative.
Ayes, 57. Hoes, 45.
Mr. Hartman moved to make the consideration of said report the special order for Tuesday next, immediately afte reading the Journal.
Mr. Speaker put the question whether the House would agree to said motion, and it was determined in the affirmative, two-thirds of all the members present voting in favor thereof.
Assembly Journal, 1868, pages 773, 774, 775.
Special Oedee. — Consideration of.
Assembly Chambee, April 7,1S68.
Mr. Speaker announced the special order, being the consideration of the majority report and resolution relative to the contested seat of the Hon. George B. Van Brunt, in the words following :
April 3, 1868.
The committee on privileges and elections respectfully report:
That they have examined fully and with great care into the case of *409 the seat of George B. Yan Brant; from the twentieth Assembly district of the city of New York, which is contested by Henry Clausen, Jr.
Each party has been represented before the committee by able and zealous counsel, who have contested the case at every point,' and over two hundred and fifty- witnesses have been sworn and examined, most of whom weue cross-examined with great particularity, and many of them at great length. The contestant opened his case by disputing the correctness of the returns from-the fourth, sixth, seventh and ninth districts of the nineteenth ward, which were returned as giving a majority of eight hundred and eight for Mr. Yan Brunt over Mr. Clausen.,
In respect to the other nine districts comprised in that Assembly district, being the first, second, third, fifth, eighth, tenth, eleventh, twelfth and thirteenth districts of the nineteenth ward, which gave Mr. Clausen a majority of seven hundred and two over Mr. Yan Brunt, there was no contest. The contestant showed, in respect to the four contested districts, that there was a great disparity between the votes returned in those districts for Secretary of State and for member.of Assembly. In the four districts, Nelson, the democratic candidate for Secretary of State, received one thousand four hundred and eighty-three votes, and McKean, the republican, four hundred and four ; but for Assembly, Clausen, democrat, is allowed only four hundred and forty-six votes, other democrats only two hundred and seventeen votes, while Yan Brant, republican, is allowed one thousand two hundred and fifty-four; thus giving him five hundred and n'inety-on e majority over all the democratic candidates combin ed, in four districts, which gave Nelson, democrat, one thousand and seventy-nine majority for Secretary of State. The other nine districts gave Nelson two thousand four hundred and eighty-nine, and McKean, republican, eight hundred and.fifty-four votes for Secretary of State ; and for Assembly, Clausen, one thousand six hundred and forty-four votes, other democratic candidates six hundred and thirty-eight, and Yan Brunt nine hundred and forty-two. In these districts, the variance is no greater than is frequently manifested in the returns of the votes cast for different candidates on the same ticket. In the four contested districts, Mr. Yan Brunt is allowed a vote more than three times as large as the vote received by the candidate of his party for Secretary of State, and no less marvelous is it that the combined strength of the democratic candidate for Assemblyman, could not secure to them *410 an aggregate vote one-half as large as that of the democratic candidate for Secretary of State. The wonderful character of the returns from the four contested districts is enhanced by the fact that the districts do not lie together, but are separated by intervening districts. It is more than strange, that in certain spots, a candidate receives large majorities, while every other candidate of his party is largely in the minority, while in the districts surrounding the same, on every side, he only receives about a party vote. We have stated the character of.the returns from these four districts, because it justifies a grave suspicion that they are false and fraudulent, yet we have not felt warranted in rejecting the returns merely for this reason.
The counsel for Mr. Clausen began by calling as witnesses persons who voted-in the seventh election district, to prove for whom they voted.
The examination of witnesses for this purpose occupied a large amount of time, and the committee afterwards deemed it best, as they were satisfied from the testimony taken in respect to that district, that the seat must be awarded to Mr. Clausen, to restrict the investigation to the seventh district. This they were enabled to do as the sitting member did not charge any wrong doing in respect to any district.
In the seventh distinct it appeared by the testimony of one of the poll clerks that according to the poll list kept in that district at the general election in November last, three hundred and forty-two persons voted at that election for member of Assembly. Of those persons, two hundred and twenty-one were examined as witnesses; of these, one hundred and twenty-six testified that they voted for Mr. Clausen ; and it was also shown, by the testimony of thirty-two others, in connection with the testimony of corroborative witnesses, that they also voted for Mr. Clausen, making a total of one hundred and fifty-eight who are proved, as claimed by the contestants, to have voted for him.
Objection may reasonably be taken as to the sufficiency of the proof in respect to some of these, but the number is not, probably, over twelve, and certainly not over twenty. If exception could justly be taken in respect to fifty of them, Mr. Clausen would, nevertheless, be entitled to his seat upon the testimony taken. The .number of votes allowed to him by the canvassers in this district was only forty-seven.
Mr. Keegan, another democratic candidate, was only allowed *411 twenty-four votes by the canvassers, yet thirty persons testify that they voted for him ; and Mr. Cochran, a third democratic candidate, was allowed fourteen votes, but is proved to have received sixteen.
Eight other persons testified that they voted for a democratic candidate, and seven others that they did not know for whom they voted. It is an impressive fact that of the two hundred and twenty-one vpters examined, only .two testified that they voted for Mr. Van Brunt, or manifested any desire to have done so. If these two are added to the one hundred and twenty-one persons not examined, the aggregate is less than one-half the number of the votes given to Mr. Van Brunt by the canvassers.
Another peculiarity of this casé is the failure of the two sworn officers, whose duty it was to make the canvass and return, to establish, upon their examination, the correctness of the canvass. Mr. Davis, who was appointed as the democratic canvasser, and by whom alone the canvass was made, is, we are constrained to say, doubtful in Ills answers, and merely says: “ Our returns are what we have certified to,” and “ it was found that George B. Van Brunt received two hundred and fifty-four, Clausen forty-six, Cochran fourteen, and Kee-gan twenty-four.”
Mr. Styles, the republican canvasser, who was placed at the canvass on the side of the table opposite to Mr. Davis, and put to work keeping tally, knows nothing about the canvass, except that he saw Mr. Davis put a piece of paper down on the table every time he counted a vote.
Mr. Hibbard, who was appointed as the democratic poll clerk, is very uncertain in his testimony, and contradicts himself as to whether or not he kept tally.
Mr. Gregory, the republican poll clerk, when asked who, from the size of the piles on the table, had the most votes, answered: “ Mr. Clausen,'decidedly.”
Another fact proved deserves especial mention, and cannot bé too strongly reprehended. Mr. Davis, by whom alone the canvass was made, had, unfortunately made a bet of two hundred dollars that Mr. Clausen would not be elected. It could scarcely have been .supposed that any election officer would allow himself to create such an interest in the success or defeat of a candidate. Your committee is of opinion, aside from this case, that it should be made by law a misdemeanor for any person to act as an election officer who has such an interest.
*412 The election laws applicable to the city of New York require that the poll clerks shall keep tallies at the canvass, and file them in the police department. It is very doubtful whether any tallies were kept by them of the Assembly canvass, and certain that none can be found on file in the election bureau of the police department.
Mr. Yan Brunt, upon the canvassers’ return, had two hundred and seven majority in this election district, which is one hundred and one more than the majority by which he is declared to have been elected in the Assembly district. Upon that return, it would require proof that fifty-four votes returned for him were actually given to MV. Clausen, to entitle the latter to a seat; but the number is less, as is proved that Mr. Keegan and. Mr.' Cochran also received more votes than were returned for them. The committee are of opinion that it it is proved that Mr. Clausen received in that district about one hundred more votes-’than are returned for him; and that, whether the return from that district is rejected as fraudulent, or a new adjustment of the vote is made upon the testimony taken, it is manifest that Mr. Clausen was elected by at least one hundred majority.
There is also ground, besides the wonderful- disparity in the votes as returned, which has already been referred to, for believing that the returns from the fourth and sixth districts were also fraudulent. No tallies by the poll clerks were filed for these districts, and three of the four canvassers are witnesses for Mr. Yan Brunt, and proved that they were electioneering in the seventh district for Mr. Yan Brunt. They do not appear creditably upon the showing of their own testimony. One of the three was also appointed as a democratic canvasser.
The committee recommend the adoption of the following resolutions :
liesolved, That Henry Clausen, Jr., is entitled to & seat as a member of this House from the twentieth Assembly district of the city of New York.
Resolved, That George B. Yan Brunt is not entitled to the seat now occupied by him.
Respectfully submitted.
F. H. WOODS.
JAMES LOUGHRAN.
JOHN B. MADDEN.
JACKSON A. SUMNER.
Assembly Document, 1868, vol. 10, No. 128. See Testimony following report.
*413 BEinoRity Report Presented.
Mr. Pitts, from the minority of said committee, presented- the following report:

To the Hon. the Assembly of the State of Hew Ybr7c :

The undersigned, one of the committee on privileges and elections, to which was referred the petitiorf of Henry Clausen, Jr., who claimed the seat which had heen awarded by the official canvass to George B. Yan Brunt, respectfully reports that he is constrained to dissent from the conclusion arrived at by the majority of the committee, for the following reasons:
The contestant presented his petition and served a notice upon the sitting member, specifying therein the following as the grounds upon which he relied to establish his claim :
1. That a large number of votes given for Clausen ‘were fraudulently counted and returned for Yan Brunt.
2. That the canvass of votes was made and conducted in a secret and clandestine manner.
3. That unauthorized persons were allowed to participate in counting and returning the votes.
4. That some of the canvassers had a pecuniary interest in the result, adverse to said Clausen.
5. That no announcement of the result of the canvass was made, as required by law.
The second, third and fifth of these grounds were abandoned by the contestant before the committee, and as to the fourth, it was only claimed as evidence to cast suspicion upon the good faith of one of the canvassers, who was himself a member of the party of which Mr. Clausen claimed to be the candidate.
There was, thereforé, but one ground left of those specified in the contestant’s notice, upon which he could rely, and that was “that a large number of votes cast for Clausen were fraudulently counted and returned for Yan Brunt.
The only evidence produced tending to show that there was any such fraudulent counting and canvass of votes, is the inference attempted to he drawn from the testimony of witnesses who testified (in a very loose and unreliable manner in many instances) that they voted for Clausen. No other or more direct evidence was adduced by the contestant to prove any fraud or irregularity in the canvass. On the part of the sitting member, the fairness and regularity of the *414 canvass was proved affirmatively, by unimpeached and conclusive evidence.
It is submitted that direct and positive evidence, such as was produced by the sitting member in this case, cannot be rebutted by any inference, however strong, and especially when, as in this case, the inference points equally strong in various directions. The contestants having failed to make out the specific frauds and irregularities upon which lie claimed to rely, has, according to well established principles, failed to make good his claim to-the contested seat. It is therefore respectfully submitted that the contestant is not entitled to be awarded the seat, upon the specific ground that he has failed to prove either of the frauds orirregnlarities set forth in his notice.
If it shall be determined that the contestant should be allowed the benefit of the evidence produced, without regard to the grounds set forth in his petition and notice, and without regard to the surprise which may be thus sprung upon the sitting member, it is further submitted that the contestant should, notwithstanding, be declared not entitled to the disputed seat. It is confidently claimed that no case can be found where a legislative body has allowed one of its members, holding an official certificate of his election, to be unseated solely upon the testimony of a majority of the voters in his district that they cast their ballots for the contestant,' without some other evidence of some Specific fraud or irregularity. This specific point was made by the sitting member, before this committee, upon the investigation of this case_, and the counsel for the contestant was challenged to produce a single precedent for such a course. Hone was produced, and it is confidently asserted that none can be found in any of the reported cases, either State, national or parliamentary. It is respectfully but earnestly insisted that no such precedent should be established. The mischiefs which would spring from it would by far counterbalance its benefits. It would open every closely contested election to what would virtually amount to a new election.
The contest would be changed from the ballot-box to the witness box, and the frauds and perjuries of the election would be repeated before the tribunals investigating the same. The change of a few venial voters from one'side of the contest to the other, might entirely change the result of a fair election, whenever the case was a closely contested one, and the reliance of the contestants would be upon the weakness or corruption of purchasable witnesses, rather than upon fair proof of the ballot of the voter.
*415 In this State, where the ballot is secret, the danger of fraud and perjury in such contests is too apparent to need further argument or illustration.
For these reasons I 'beg leave to submit to this House the following resolution:
Resolved, That Hon. Geo. B. Tan Brunt was legally elected member of Assembly for the twentieth Assembly district of the city of New York, at the last general election.
EDMUND L. PITTS.
April 6th, 1868.
Assembly Journal, 1868, vol. 1, pages 821, 822, 823.
Mr. Pitts moved the adoption of the minority report and the resolutions accompanying it, as a substitute for the majority report.
Mr. Speaker put the question, on receiving for consideration the said minority report, and it was determined in the negative.
Ayes, 46. Noes, 65.
Bepoet of the Majoeity adopted. — Henby OlauseN, Je., awaeded Seat.
Mr. Speaker then put the question, on the adoption of the majority report and resolutions, and it was determined in the affirmative.
Ayes, 64. Noes, 44.
PbIVILEGES OF THE FlOOE ©BANTED,TO Me. Tan BeüNT.
On motion of Mr. Hartman, the privileges of the floor were extended to the Hon. George B. Tan Brunt for the remainder of the session.
Me. Clausen Swoen in.
Mr. Clausen was then sworn in as a member of the Assembly by Mr. Speaker.
Assembly Journal, 1868, vol. 1, pages 819, 820, 821, 822, 823, 824.